JOHNSON *v.* BARNETTE

No. 40959        February 16, 1959        108 So. 2d 880

*Colbert Dudley, L. Barrett Jones, Jackson,* for appellant.

*Wingo & Finch,* Hattiesburg, for appellee.

LEE, J.

Mrs. Felicia Williams Barnette, on September 26, 1949, obtained a divorce from her husband, L. E. Barnette, with the award of custody of the three children of the marriage, John Emilie, William Lawrence, and James

Paul, and $100 per month for the support of the children to be paid by the father.

Because of default in payments, thereafter on April 30, 1954, she filed a petition to have Barnette adjudged to be guilty of contempt and to require him to give a ne exeat bond. On May 25, 1954, after his arrest, he executed such a bond in the sum of $2,500, with Mrs. J. E. Barnette, his wife, and Kate W. Rotchild as sureties. Subsequently by by a decree of May 6, 1955, upon agreement of the parties, Mrs. Rotchild was released as a surety, but the bond was to remain in full force and effect as to Mrs. J. E. Barnette.

Mrs. Barnette, who had married again and was then Mrs. Johnson, on June 25, 1957, filed her petition against Mrs. J. E. Barnette for a summary judgment and money decree on the $2,500 bond. After a hearing, on July 23, 1957, the petition was dismissed without prejudice. Then, on July 26, 1957, she filed another petition against both Mrs. J. E. Barnette for a judgment on the bond, and against Barnette for contempt.

Barnette, through his attorneys, in answer thereto, filed a motion to dismiss the petition because of the agreement between the parties on January 21, 1955, that, on payment of $500, the contempt proceedings then pending against him would be continued, provided he paid the support money of $100 per month through the office of the clerk of the court, commencing in February 1955; that, under the agreement, an act of God or other calamity excused him from performance; and that his only failure in that respect was due to an injury to his back, making it impossible for him to work, and therefore excused him temporarily from performance.

Letters constituted the agreement. The material part of a letter of Barnette's attorneys, of date of January 21, 1955, was as follows: "Enclosed herewith is cashier's check Number 103541 dated January 19th, 1955 drawn on the National Savings Bank and Trust Company of

Cincinnati, Ohio in the amount of $500.00 to be paid by Mr. L. E. Barnette to his former wife, Mrs. Felicia B. Johnson with the following understanding:

"That Mr. Barnette will pay monthly support and maintenance through the office of the Chancery Clerk for his children in the sum of $100.00 per month; that at the March 1955 term of the Chancery Court, providing that Mr. Barnette has complied with this agreement, excluding an act of God or other calamity, Mrs. Rotchild will be released as a surety upon his ne-exeat bond and that the present hearing on the question of contempt be continued."

The material part of the reply thereto by Mrs. Barnette's attorneys, of date of January 24, 1955, was as follows: "Your letter of January 21, 1955 correctly outlines the above captioned matter except that, as you understand, we will expect Mr. Barnette to get a 'body' to go on the bond with Mrs. Barnette so as to comply with the statute in his requirement that two sureties be posted. However, we understand that the other surety will be simply for the purpose of complying with the statute, unless, of course, the sheriff will permit one surety alone.

"We would not, of course, insist that Barnette be returned to jail if it is absolutely impossible for him to get the other surety, if he otherwise keeps the gentlemen's agreement that was reached."

The decree of May 6, 1955, heretofore mentioned, had been entered pursuant to the foregoing agreement.

A copy of payments made by L. E. Barnette to the chancery clerk's office of Forrest County, Mississippi, commencing February 7, 1955, and to September 13, 1957, was introduced in evidence.

In the record was a letter from Jos. M. Rheins, attorney of Cincinnati, Ohio, dated February 23, 1957, addressed to Honorable Lester Clark, as judge, in regard to the compliance with the decree as to the support of the three Barnette children. The letter advised that Barnette had

been unable to work since January 31, 1957, because of a serious back injury and was in the hospital in traction with the possibility that surgery would be necessary; that Barnette had been contributing $100 monthly even though one of the boys, John Emilie, was over 18 years of age; and that he was fully aware of his responsibility and was hopeful that the addressee, with these facts, would be in a better position to evaluate any complaint of his former wife. He enclosed a certificate from Dr. Robert C. Hill, and represented that he could obtain statements from two other doctors, and gave assurance of the fullest co-operation.

The certificate of Dr. Hill, of date of February 20, 1957, was as follows:

"This is to certify that Mr. Larry E. Barnette, 730 Derby Avenue, Cincinnati 32, Ohio, has been under my care since December 14th, 1956 because of a low back injury.

"He has been unable to work since January 31st, 1957, because of a more severe re-injury to his lower back. At present, it is going to be necessary for him to be hospitalized with a possibility of an operation in the near future.

"In view of the above situation it is impossible to determine when he will be able to return to work.

"Should any further information be needed regarding Mr. Barnette's condition, please feel free to contact us."

The Court, on December 3, 1957, adjudicated that Barnette, commencing with his payment of $100 on February 7, 1955, was in arrears in the amount of $260, and, in addition, that he had been ordered to pay $100 for the petitioner's counsel, and to that extent, he was adjudged in contempt. But it was provided that, if he should pay that amount, plus an additional $100 on December 15, 1957, he would purge himself of the contempt. It was further provided that the appearance bond would continue in full force and effect.

After a motion for a rehearing and correction of the decree had been overruled, Mrs. Johnson appealed.

The appellant's contention here in effect is that Barnette was out of the state, not amenable to process, and that, since he was in contempt for a failure to make all payments, the ne exeat bond should have been declared to be forfeited; and that the effect of the court's failure so to do in fact nullified the judgments which accrued on account of monthly payments for support and which remained unpaid.

The bond in question required the appearance of Barnette before the Chancery Court of Forrest County at the June 1954 term of court and thereafter as required by law, until discharged by the court, and to make himself amenable to all orders and process of the court until discharged.

In Muckelrath v. Chezem, 184 Miss. 511, 186 So. 621, and Johnson v. Johnson, 189 Miss. 561, 198 So. 308, the office and object of the ne exeat writ was stated and explained. Both of those cases were reviewed in Gibson v. State, for use of Clark, 220 Miss. 39, 70 So. 2d 30, where Gibson, after the divorce and accompanying decree against him for the support of his children, moved to Louisiana. Later he defaulted in his payments, and was then required to give a ne exeat bond. Upon compliance therewith, he went back to Louisiana without permission. When other proceedings were taken, neither he nor any of his property could be found in the state, but his sureties knew his whereabouts and he was present at the hearing on the day set therefor. The opinion asked the question, "Did the mere fact that he was not available for service of personal process on this petition, under the foregoing circumstances, render his sureties liable on his bond?", and it answered the question by saying, "We do not think so." It was further said, "The conduct of appellant in this case met the objects and purposes of the

bond'', and explained that the bond had not been discharged and was still in force.

■■ ■ Just what significance the court gave to the showing that Barnette had sustained a severe injury to his back is not reflected in the decree; but, if the letter and doctor's certificate were true, effect could have been, and doubtless was, given to them as affording a sufficient excuse and reasonable basis for declining to order the forfeiture of the bond. Actually Barnette appeared in court through his attorneys. Although not amenable to process he was present. Besides the appellant was deprived of no right. The learned chancellor refused to order a forfeiture of the bond, but held that it is still in effect. This Court is not warranted in holding that he was without sufficient justification for that action.

■■■ The decree of May 6, 1955, entered pursuant to the agreement between the attorneys for the parties, did not exculpate Barnette from liability because of judgments then outstanding against him. The contemplation was that he would not be put back in jail for such default, if he thereafter kept up his payments. There was no sacrifice of the right to executions or any other proper process short of his incarceration in jail. Hence there has been no nullification of any outstanding judgment.

From which it follows that the decree must be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes,* and *Ethridge, JJ.,* concur.